UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-315-RGJ

SYDEY JENKINS, AS NEXT FRIEND                                             Plaintiffs
OF "STUDENT JOHN DOE" AND SYDEY
JENKINS

v.

JEFFERSON COUNTY BOARD OF                                                 Defendants
EDUCATION A/K/A JEFFERSON
COUNTY PUBLIC SCHOOLS, ET AL.

* * * * *

## MEMORANDUM OPINION AND ORDER

Jefferson County Board of Education, Coach Marvin Dantzler ("Dantzler"), Athletic Director Ryan Bringhurst ("Bringhurst"), and Central High School Principal Raymond Green ("Green") (collectively, "Defendants") move to dismiss Plaintiffs' amended complaint. [DE 4]. Briefing is complete. [DE 7; DE 10]. For the reasons below, Defendants' Motion is **GRANTED IN PART**.

### I. BACKGROUND

On November 3, 2017, John Doe, a freshman member of Central High School's ("Central's") football team, was in the locker room with his teammates getting ready for a playoff game when one of the team's starters ("The Starter") entered. [DE 1-1 at 95-96]. The Starter had a reputation—among the team and the coaching staff, including Bringhurst and Dantzler—for "picking on younger team members." *Id.* John Doe, like many of his teammates, "perceived" the Starter as "violent." *Id.* After intimidating several of John Doe's teammates, the Starter physically assaulted John Doe. [*Id.* ("[The Starter] punched [John Doe] in the shoulder, then suddenly and violently punched [him] in the stomach, causing [him] to bend over and hold his stomach. While

1

[John Doe] was crouched and unable to defend himself, [the Starter] . . . struck a violent blow to the back of [John Doe's] head, causing [him] to become unresponsive and fall to the carpeted locker room floor"). After his teammates realized John Doe was seriously injured, they told an assistant coach what happened. *Id.* EMS arrived and transported John Doe to the hospital, where doctors diagnosed him with a concussion. *Id.* at 97. At the time of the assault, Bringhurst and Dantzler were on the football field with the other starting players for Central's team. *Id.* at 95.

Before the game, Dantzler "questioned [the Starter] . . . and he admitted that he struck [John Doe] on the back of the head." *Id.* at 97. Even though the Starter admitted to assaulting John Doe, Dantzler and Bringhurst allowed him to play because it was a playoff game and his "participation was needed to win." *Id.*

A few days later, Sydey Jenkins ("Jenkins"), John Doe's mother, met with Principal Green. *Id.* at 98. During the meeting, Green told her: "I am not aware of this incident and I will talk to Coach D and Mr. Bringhurst and investigate what happened." *Id.* at 99. Green "assured her that that (sic) her son was safe and that he would get back with her by Friday, November 10, 2017, with more information about what happened to her son." *Id.* But, he never did. *Id.* Jenkins had many questions for Central's administration about what happened to her son but received no answers. Green would not speak with her. *Id.* Nor would Dantzler and Bringhurst. [*Id.* at 100 ("[N]either [Dantzler] nor [Bringhurst] ever contacted [Jenkins] to give her any information about what happened to her son or to inquire about the health condition of her son")].

In the months following the assault, John Doe was unable to attend school because he was suffering from symptoms from the assault. *Id.* Mr. Founder, an Assistant Principal at Central, "contacted [Jenkins] and informed her that her son was about to be dismissed from [Central] because of too many missed days." *Id.* at 101. Jenkins told Founder that her son had missed

school because of the injuries he sustained during the assault and offered to provide him with doctor's notes. *Id.* Jenkins "provided . . . doctor's notes to both excuse her son's absences and to explore accommodations the school would make for [John Doe] due to injuries he suffered when he was assaulted by [the Starter]." *Id.*

"[E]ven though [Central] knew that [John Doe] was absent due to injuries he suffered when he was assaulted by another student," Green's staff still "initiated a truancy investigation" against John Doe. *Id.* When the truancy officer spoke with Jenkins and she explained why John Doe had missed school, the truancy officer dismissed the truancy case. *Id.* at 102.

In May 2018, Jenkins "filed a Juvenile Public Offense complaint against the Starter. *Id.* at 103. After she filed the complaint, she called the Superintendent and left him a "long detailed message expressing her concerns about her son and how she [had] been treated by [Green]." *Id.* at 103.

Green eventually reached out to her to set up a meeting. *Id.* at 104. During the meeting, Green asserted that John Doe "was on the edge of being dismissed from Central because of his absentee record and his grade point average. [Green] then stated that [John Doe] did not have to be dismissed, implying that if [Jenkins] just went away and did not cause any more trouble for the football team her son would be allowed to stay as a student at Central." *Id.*

In December 2018, Plaintiffs sued in Jefferson County Circuit Court. While the case was pending in state court, Defendants moved to dismiss and Plaintiffs amended their complaint. Defendants removed the case to this Court.

In January 2019, John Doe "received a so-called '504 Plan' addressing certain accommodations to be made in providing him an education at [Central]." *Id.* at 105.

3

Plaintiffs assert claims of negligence against Dantzler, Bringhurst, Green, and JCBE, and a claim of retaliation in violation of 29 U.S.C. § 794 against JCBE. *Id.* at 106-107.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

4

### III.     DISCUSSION[1]

Defendants move to dismiss the Amended Complaint for three reasons: 1) "All individually named Defendants' actions regarding the treatment of [John Doe] were discretionary and therefore Plaintiffs' negligence claim is barred pursuant to the qualified immunity doctrine"; 2) "[JCBE], a state agency, is immune from Plaintiffs' claims based on governmental immunity"; and 3) "No individual liability exists regarding Plaintiffs' federal retaliation claim." [DE 4-1 at 161-162].

#### A.  Negligence Claims Against Dantzler, Bringhurst, Green, and JCBE

Defendants Dantzler, Bringhurst, Green, and JCBE argue Plaintiffs' negligence claims against them should be dismissed based on the doctrine of qualified immunity. *Id.* at 165.

> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [government official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (internal quotation and citations omitted). There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss on qualified immunity grounds that differs from the plausibility standard established under *Iqbal*. *Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*," *Wesley*, 779 F.3d at 434 (quoting *Evans-*

---

[1] Throughout both their Motion and Reply, Defendants refer to facts outside the Amended Complaint. Moreover, at times, Defendants base their arguments in favor of dismissal on these facts. The Court cannot and will not consider facts outside the Amended Complaint. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint"). When necessary, the Court will note when Defendants argue facts outside the Amended Complaint.

*Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

"Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). But "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* Thus, qualified immunity "rests not on the status or title of the officer or employee, but on the function performed." *Id.* at 521.

Acts involving supervision and training are consistently held to be discretionary functions. *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006); *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006). Whether qualified immunity shields individuals from suit under Kentucky law depends on whether their acts of supervision and training were performed in good or bad faith. *Nichols*, 26 F. Supp. 3d at 642. Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

### 1. Coach Dantzler

Defendants argue that Dantzler is "immune from Plaintiffs' baseless claims" because he "delegated authority to manage the football locker room to his assistant coaches"[2] and had "no direct involvement with the incident involving [John Doe]." [DE 4-1 at 168-169]. Plaintiff disagrees, arguing: 1) "[A]ll of [John Doe's] injuries were foreseeable, because not only was [John Doe] left unattended without appropriate adult supervision, but [he] was also let unattended with [the Starter] . . . whom was known to the Defendants to be violent towards other students"; and 2) under the Coaches'/Sponsors' Code of Conduct ("Code")[3], "Dantzler was given a specific task to never leave any student unattended, yet a known violent student with other student. As such, his job required him to perform a specific act that was not discretionary in nature." [DE 7 at 194].

"Teachers assigned to supervise juveniles during school-sponsored curricular or extracurricular activities have a duty to exercise that degree of care that ordinarily prudent teachers or coaches engaged in the supervision of students of like age as the plaintiff would exercise under similar circumstances." *Yanero*, 65 S.W.3d at 529 (finding that enforcing a "known rule requiring that student athletes wear batting helmets during baseball batting practice" was a ministerial act). "The manner in which supervision is conducted is also discretionary. However, the failure of teachers to supervise students 'in the face of known and recognized behavior' is not a discretionary function. Therefore, if teachers abdicate their duty to supervise their students, qualified official immunity is not a valid defense to a claim of negligent supervision." *Jenkins Indep. Sch. v. Doe*, 379 S.W.3d 808, 812 (Ky. App. 2012) (quoting *Turner v. Nelson,* 342 S.W.3d 866, 876–77 (Ky.

---

[2] These facts are not in the Amended Complaint.
[3] Under the Code, "[t]he coach sponsor shall never leave any student unattended without appropriate adult supervision." [DE 7-1 at 206].

2011) ("because no discovery was conducted, the lower court was unable to undertake the proper analysis to determine whether the coaches had completely failed to supervise the football team"). Plaintiffs allege that Dantzler was aware of the Starter's reputation for "picking on younger team members." [DE 1-1 at 96]. This allegation poses questions of fact about whether: 1) Dantzler was aware of the Starter's reputation; 2) "picking on younger team members" constitutes a "known and recognized behavior"; and 3) knowing the Starter's reputation, Dantzler abdicated his duty to supervise by failing to be physically present in the locker room. The Court cannot resolve issues of fact on a motion to dismiss. *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) ("[W]hile we always hope to resolve qualified immunity claims at the earliest possible point in the litigation, we cannot resolve such claims when we need more factual development to do so"). Plaintiff has also plausibly alleged that Dantzler violated the Code by leaving the players unattended in the locker room. Enforcing the Code was a ministerial act, one that "involved only the enforcement of a known rule." *Yanero*, 65 S.W.3d at 529 ("The performance of that duty in this instance was a ministerial, rather than a discretionary, function in that it involved only the enforcement of a known rule requiring that student athletes wear batting helmets during baseball batting practice"). Because Plaintiff has plausibly alleged that Dantzler abdicated his duty to supervise and was negligent in performing the ministerial act of enforcing the Code, he is not entitled to qualified immunity. The Court therefore denies the Motion as to Dantzler.

**2. Athletic Director Bringhurst**

Defendants contend that Plaintiffs' claims against Bringhurst should be dismissed based on qualified immunity because he "had no actions or involvement with [John Doe's] injuries or the investigation into [them]" and owed John Doe only a general duty to "'provide a safe school environment.'" [DE 4-1 at 169-170]. Plaintiffs, on the other hand, argue that Bringhurst is not

8

entitled to qualified immunity because he acted with a "corrupt motive" and his actions "willfully . . . caused harm to [John Doe]." [DE 7 at 196].

Plaintiffs allege that "Bringhurst breached [his] duty of care by failing to supervise all members of the football team during a school-sanctioned playoff football game on the grounds of Central High School." [DE 1-1 at 106]. Although Defendants argue that Bringhurst had a general duty to provide a safe environment, it is unclear what his "function" was as an athletic director. *Yanero*, 65 S.W.3d at 521 (Qualified immunity "rests not on the status or title of the officer or employee, but on the function performed"). Based on Plaintiffs' allegations, Bringhurst was closely involved with the football team: he was on the field before the game and was aware of the Starter's reputation. Without a better understanding of his function, the Court cannot determine whether he entitled to qualified immunity. The Court denies the Motion as to Bringhurst.

### 3. Principal Green

Defendants argue that the "claims against Principal Green should be dismissed based on the qualified immunity doctrine" because he was not "part of Coach Dantzler's staff," was not "involved in any decisions regarding management of the team," did not have any "involvement in the direct supervision of the football team," and "lacked any knowledge or concerns Plaintiffs had regarding the treatment of [John Doe] on November 3, 2017. [DE 4-1 at 169]. Plaintiffs, on the other hand, argue that Green is not entitled to immunity because he acted in bad faith. [DE 7 at 196 ("[Green] kept ignoring said Plaintiff's complaints until she filed this lawsuit, and her story was made public by the local news media. This evidence, along with the alleged actions of [Green] in the Plaintiffs' complaint shows by circumstantial evidence that [Green] not only acted with a corrupt motive . . . but also willfully and indeed did cause harm to [John Doe]")].

Plaintiffs allege that Principal Green: 1) owed John Doe a "duty of care to provide a safe environment"; 2) breached this duty by "failing to ensure a safe environment for all members of the football team during a school-sanctioned playoff football game on the grounds of Central High School"; and 3) was the proximate cause of Plaintiff's injuries. [DE 1-1 at 106]. Although the Court has concerns about whether Plaintiffs can prevail on this claim, they have pled just enough factual content in the Amended Complaint to "nudge[] their [negligence claim] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570 (2007). And based on the limited information here, the Court declines to rule on whether Green is entitled to qualified immunity at this time. The qualified immunity questions presented by the parties are fact-intensive, and the record is not "adequately developed to evaluate the defense at the pleading stage under Rule 12(b)(6)." *See Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). As a result, the Court denies the Motion as to Green.

**4. Jefferson County Board of Education**

Defendants argues that JCBE, as an agency of the state, is immune from Plaintiffs' negligence claims. [DE 4-1 at 172]. Plaintiffs are silent on this issue.

In *Yanero*, the Kentucky Supreme Court held that "in authorizing interscholastic athletics at its schools, the Jefferson County Board of Education was performing a governmental function…" Thus, it was "entitled to the protection of governmental immunity and cannot be sued in tort for any negligence in the performance of that function." *Yanero*, 65 S.W.3d at 527. JCBE, in authorizing interscholastic athletics at Central High School, performed a government function and is therefore immune. Because the precedent on this issue is clear and Plaintiff has failed to respond to this argument, the Court will dismiss Plaintiffs' claim against JCBE.

**B.     Retaliation Claim Against JCBE**

"[T]he Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding and requires reasonable accommodations to permit access to such recipient facilities and programs by disabled persons." *L.G. by & through G.G. v. Bd. of Educ. of Fayette Cty., Kentucky*, 775 F. App'x 227, 230 (6th Cir. 2019). "Retaliation claims under § 504 of the Rehabilitation Act . . . are reviewed under the . . . burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* at 232. "To state a retaliation claim successfully . . . a plaintiff's pleading must establish a *prima facie* case of retaliation, which requires showing that: 1) the plaintiff engaged in protected activity; 2) the defendant knew about the protected activity; 3) the defendant took adverse action against the plaintiff; and 4) a causal connection exists between the protected activity and the adverse action." *Id.*

Plaintiffs have sufficiently plead a retaliation claim against JCBE. Defendants' argument focuses on the third and fourth elements of the prima facie test.[4] They tacitly concede that Plaintiffs have satisfied the first and second elements.[5] As a result, for purposes of the Motion, the Court will find that the Plaintiffs have satisfied those elements.

---

[4] Defendants also argue that: 1) individually named parties, like Dantzler, Bringhurst, and Green are to "be dismissed with prejudice when sued for allegedly violating the Rehabilitation Act"; and 2) "Plaintiffs concede in their Response that their Complaint was filed more than a year following when Jenkins 'advocated' for [John Doe] in seeking accommodations for injuries." [DE 10 at 215-216]. Plaintiffs bring their retaliation claim against JCBE, not Dantzler, Bringhurst, or Green. Thus, the Court cannot dismiss a claim against them when it does not exist. And although Plaintiffs make several statements in their Response that Defendants interpret as suggesting that their claim is time-barred, the Court declines to make that finding because the allegations in the Amended Complaint do not "affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

[5] "[R]equesting an accommodation because of a disability is a protected activity," *Reitz v. Ford Motor Co.*, No. 3:16-CV-00765-CRS, 2019 WL 4675387, at *7 (W.D. Ky. Sept. 25, 2019), and Defendants never argue that JCBE did not know of the protected activity.

Defendants argue that Plaintiffs have failed to establish that "Dantzler, Bringhurst, and/or Green took adverse action" against Plaintiff or John Doe. [DE 4-1 at 166]. "To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Presuming all factual allegations to be true and making all reasonable inferences in favor of the Plaintiffs, the Court finds that the Plaintiffs sufficiently pled the third element by alleging that they "suffered an adverse action when [Green, Dantzler, and Bringhurst] failed to communicate with [Jenkins] concerning [John Doe's] needs . . . and instead commenced truancy proceedings against [him] and continued to threaten him with dismissal from [Central]." [DE 1-1 at 107]. A reasonable person, when threatened with dismissal from the school and a truancy action, would be dissuaded from continuing to request accommodations.

Defendants also argue that Plaintiffs have failed to show that the "District's enforcement of statutorily mandated truancy laws against Plaintiffs are . . . casually connected to the decision of whether [John Doe] receives a" 504 plan. In making this argument, Defendants rely on facts about John Doe's attendance record, conversations between JCBE officials and Plaintiffs, and John Doe's 504 plan. These facts are outside the Amended Complaint and the Court cannot consider them when ruling on the Motion. *Hensley Mfg.*, 579 F.3d at 613. Based on Plaintiffs' allegations, the Court finds that they have satisfied the fourth element. As a result, the Court will deny the Motion as to the retaliation claim.

## IV.  CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

1) Defendants' Motion to Dismiss [DE 4] is **GRANTED IN PART**.

2) Plaintiffs' negligence claim against JCBE is **DISMISSED WITH PREJUDICE**.

Copies to:     Counsel of record